**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREEDOM HEALTHCARE, LLC, FREEDOM BEHAVIORAL HOSPITAL OF BASTROP, LLC, FREEDOM BEHAVIORAL HOSPITAL OF BUNKIE, LLC, FREEDOM BEHAVIORAL HOSPITAL OF CENTRAL ARKANSAS LLC, FREEDOM BEHAVIORAL HOSPITAL OF FERRIDAY, LLC, FREEDOM BEHAVIORAL HOSPITAL OF GREENVILLE, LLC, FREEDOM BEHAVIORAL HOSPITAL OF LAKE CHARLES, LLC, FREEDOM BEHAVIORAL HOSPITAL OF LEESVILLE, LLC, FREEDOM BEHAVIORAL HOSPITAL OF TOPEKA, LLC, FREEDOM BEHAVIORAL HOSPITAL OF WICHITA, LLC, FREEDOM HOSPITAL OF MAGNOLIA, LLC, and FREEDOM BEHAVIORAL OF WEST MONROE, LLC,** <br><br> **Plaintiffs,** <br><br> **vs.** <br><br> **Freedom Recovery, LLC,** <br><br> **Defendant.** | **CIVIL ACTION NO. 3:26-cv-3753** <br><br> **DISTRICT JUDGE** <br><br> **MAGISTRATE JUDGE** |

**<u>COMPLAINT FOR PERMANENT INJUNCTION AND DAMAGES</u>**

Plaintiffs, by and through their undersigned counsel, hereby file this Complaint for permanent injunction and damages against Defendant, Freedom Recovery, LLC ("Defendant" or "Freedom Recovery"), alleging as follows:

## NATURE OF THE CASE

1. This is an action for infringement of Plaintiffs' senior common-law trademark rights in the word marks FREEDOM, FREEDOM HOSPITAL, FREEDOM BEHAVIORAL HOSPITAL, and FREEDOM BEHAVIORAL under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for trademark infringement and dilution, trade-name infringement, unfair competition, and related claims under the laws of the State of Louisiana and the Louisiana Unfair Trade Practices Act, all arising from Defendant's unauthorized use of the mark FREEDOM RECOVERY in connection with the offering, marketing, advertising, and promotion of addiction-related and behavioral-health services.

## PARTIES

2. Plaintiffs are Freedom Healthcare, LLC; Freedom Behavioral Hospital of Bastrop, LLC; Freedom Behavioral Hospital of Bunkie, LLC; Freedom Behavioral Hospital of Central Arkansas LLC; Freedom Behavioral Hospital of Ferriday, LLC; Freedom Behavioral Hospital of Greenville, LLC; Freedom Behavioral Hospital of Lake Charles, LLC; Freedom Behavioral Hospital of Leesville, LLC; Freedom Behavioral Hospital of Topeka, LLC; Freedom Behavioral Hospital of Wichita, LLC; Freedom Hospital of Magnolia, LLC, and Freedom Behavioral of West Monroe, LLC (collectively, "Plaintiffs"). Each named Plaintiff is a limited liability company organized, registered, and/or existing under the laws of Louisiana or another state.

3. Plaintiffs also operate under various registered trade names, including "Freedom Behavioral Hospital of Monroe," "Freedom Behavioral Hospital of West Monroe," "Freedom Hospital of Magnolia," and "Freedom Behavioral Hospital of Monroe-Ruston Campus," among others. Freedom Healthcare, LLC is domiciled at 2837 Ernest Street, Suite C, Lake Charles, Louisiana 70601. Collectively, Plaintiffs operate under the FREEDOM, FREEDOM HOSPITAL,

FREEDOM BEHAVIORAL, and FREEDOM BEHAVIORAL HOSPITAL brands, maintain their principal offices in Lake Charles, Louisiana, and operate behavioral-health facilities across Louisiana, Mississippi, Texas, Arkansas, Kansas, and other states. Plaintiffs collectively own and use the FREEDOM, FREEDOM HOSPITAL, FREEDOM BEHAVIORAL HOSPITAL, and FREEDOM BEHAVIORAL marks in connection with addiction-related and behavioral-health services (the "FREEDOM Marks").

4. Defendant, Freedom Recovery, LLC, is a limited liability company organized and existing under the laws of the State of Louisiana, with its principal place of business at 205 Grayson Street, West Monroe, Louisiana 71292.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related state-law claims pursuant to 28 U.S.C. § 1367, because this action arises under the Lanham Act, 15 U.S.C. § 1125, and includes claims arising under Louisiana law.

6. This Court has personal jurisdiction over Defendant whose principal place of business is within this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claim occurred in this district, and because the Defendant is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### *Plaintiffs' Business and Trademarks*

8. Plaintiffs, including Freedom Healthcare, LLC, advertise and operate behavioral-health facilities and clinics under the FREEDOM Marks, including "Freedom Behavioral Hospital

of Monroe" in Monroe, Louisiana. Plaintiffs operate across Louisiana, Mississippi, Texas, Arkansas, Kansas, and other states, including in and around the Monroe and West Monroe market.

9. Louisiana Secretary of State records identify 17 affiliated entities and registered trade names operating under the FREEDOM Marks, demonstrating the breadth of Plaintiffs' operations and market presence. A true and correct copy of the Louisiana Secretary of State records reflecting Plaintiffs' affiliated entities and registered trade names is attached hereto as Exhibit 1.

10. Plaintiffs own common-law trademark rights in the FREEDOM Marks, which they have used continuously in interstate commerce since at least as early as 2016. Plaintiffs have achieved significant commercial success, expanding operations from Louisiana into multiple neighboring states including Mississippi and Texas, and collectively employ over 3,000 individuals across Plaintiffs' locations. Plaintiffs have used the FREEDOM Marks in interstate commerce, since at least 2016, with the opening of Freedom Hospital of Magnolia, LLC, in March 2016. Plaintiffs have likewise advertised to and provided services to patients from within and outside of Louisiana.

11. Plaintiffs are continuing to invest in expansion to grow their market presence, expanding the geographic scope of the FREEDOM Marks, including in areas where the mark has previously been used. For example, Plaintiffs recently acquired StoneBridge Behavioral in Lake Charles, Louisiana, and the behavioral treatment center at the Glenwood Regional Medical Center in West Monroe, Louisiana. These acquisitions further demonstrate Plaintiffs continued investment in and growth of their FREEDOM Marks. Moreover, these acquisitions have received attention in the news cycles, further promoting the FREEDOM Marks in their applicable communities.

12. Over the past eleven years, Plaintiffs have invested substantial resources in building their brand and reputation. As a result of this longstanding and continuous use, Plaintiffs have developed strong consumer recognition and goodwill in the FREEDOM Marks, particularly in the healthcare and behavioral-health sectors.

13. Plaintiffs have used the FREEDOM Marks in commerce throughout Louisiana, Texas, Mississippi, and other states in connection with the offering, marketing, advertising, and promotion of a broad range of healthcare services, including psychiatric inpatient and intensive outpatient services, and co-occurring treatment services (such as chemical dependency and substance abuse treatment), and related behavioral-health services. Plaintiffs' use includes the website domain name "freedombehavioral.com," social-media advertisements, and prominent use of the marks in their logos.

14. Plaintiffs have provided co-occurring treatment services for years under the FREEDOM brand, which services may include psychiatric inpatient, intensive outpatient, and substance-abuse services.

15. In the marks FREEDOM, FREEDOM BEHAVIORAL HOSPITAL, and FREEDOM BEHAVIORAL, the dominant feature is the word "Freedom." In the composite marks, that word is followed by the descriptive or generic terms "Behavioral Hospital" or "Behavioral," respectively. The arbitrary word "Freedom" is the dominant source-identifying feature that distinguishes Plaintiffs' treatment services as associated with Plaintiffs' established goodwill in the healthcare and behavioral-health sectors.

16. Plaintiffs' signage, logos, and branding materials prominently feature and visually emphasize the term FREEDOM as the dominant source-identifying element, with the descriptive terms "Behavioral Hospital" or "Behavioral" displayed in a subordinate, secondary manner. To

the extent the term FREEDOM is deemed other than inherently distinctive, it has acquired secondary meaning as a source identifier for Plaintiffs' behavioral-health, mental health services, substance-abuse treatment, chemical dependency treatment, and co-occurring issue treatment services through over ten years of continuous and prominent use in signage, logos, advertising, and website branding. Google Maps images of the signage in front of Plaintiffs' Monroe location are provided below as examples of how Plaintiffs advertise and mark their businesses. *See* https://maps.app.goo.gl/kgMg3T2eDwH4CJ6a9 (last accessed September 22, 2026).






17. Plaintiffs accordingly assert common-law trademark rights in FREEDOM, FREEDOM BEHAVIORAL, and FREEDOM BEHAVIORAL HOSPITAL, individually and as a family of FREEDOM-formative marks. Plaintiffs' systematic use of this family of marks spanning over a decade and across over a dozen affiliated entities, has resulted in widespread consumer recognition that any mark containing the "FREEDOM" formative element in the behavioral-health and addiction-treatment sectors identifies services originating from or affiliated with Plaintiffs.

***Defendant's Infringing Conduct***

18. Defendant has infringed Plaintiffs' superior rights in the FREEDOM Marks by using the name and mark FREEDOM RECOVERY in connection with addiction-related and behavioral-health services.

19. Upon information and belief, Defendant began using the FREEDOM RECOVERY mark in 2022, more than six years after Plaintiffs first adopted and began using the FREEDOM BEHAVIORAL HOSPITAL mark in commerce.

20. Defendant features the FREEDOM RECOVERY mark centrally in its logo and on its website, including at the domain name "freedomrecoveryla.com," where the mark appears as the website's heading. Defendant also uses the Facebook handle "@FreedomRecoveryla" to advertise its addiction-related wellness services and maintains a YouTube presence featuring the FREEDOM RECOVERY mark. These Internet-based uses appear in online searches alongside Plaintiffs' domain name "freedombehavioral.com" and related online presence. The parallel "freedom[descriptor]" naming pattern is likely to create confusion among persons searching online for Plaintiffs' behavioral-health and addiction-treatment services.

21. Defendant also displays the FREEDOM RECOVERY mark on signage outside its principal place of business, located less than 10 miles from Plaintiffs' Freedom Behavioral Hospital of Monroe location and 2.4 miles from its facility at Glenwood Regional Medical Center. Defendant therefore operates in the same Monroe/West Monroe market as Plaintiffs' facilities.

22. Both Defendant and Plaintiffs offer overlapping addiction-related and behavioral-health services, including inpatient residential care, individual therapy, and group therapy, for patients seeking mental health and addiction-related treatment. According to its website, Defendant expressly offers residential care in connection with the same or similar types of co-occurring disorders offered by Plaintiffs, and it expressly advertises that it provides treatment for individual disorders including those with substance abuse, mental health disorders, or both. *See* https://www.freedomrecoveryla.com/our-services (last accessed September 22, 2026) ("Our residential dual diagnosis treatment center is available to those with both substance abuse and/or

mental health disorders. A co-occurring disorder, where both substance abuse and mental illness exist can be challenging to treat, but possible for many!").

23. The parties' shared consumer base consists in substantial part of individuals seeking urgent treatment behavioral-health conditions, including conditions caused by substance abuse, together with the family members, probation officers, courts, and state agencies who refer them. Such persons frequently make treatment inquiries under conditions of urgency or distress and are therefore less likely to distinguish between similarly named providers offering overlapping services in the same market.

24. Defendant's FREEDOM RECOVERY mark is substantially similar to Plaintiffs' FREEDOM, FREEDOM BEHAVIORAL, and FREEDOM BEHAVIORAL HOSPITAL marks, which Plaintiffs have used continuously in offering behavioral-health and co-occurring treatment services since well before Defendant's adoption of its own mark.

25. Defendant's FREEDOM RECOVERY mark features the identical dominant feature "Freedom" as Plaintiffs' FREEDOM Marks. The additional terms "Recovery," "Behavioral," "Hospital," and/or "Behavioral Hospital" are descriptive or generic in connection with the services at issue and are insufficient to distinguish the marks. A reasonable consumer is therefore likely to believe that Defendant's clinic is affiliated with, sponsored by, or otherwise associated with Plaintiffs' operations.

26. Given the proximity of Defendant's facility—less than 10 miles from Plaintiffs' primary Monroe location and less than 2.4 miles from its newer center at the Glenwood Regional Medical Center—and the prominence of Plaintiffs' operations in the Monroe/West Monroe market, including multiple facilities and a broad family of affiliated entities, Defendant knew or

should have known of Plaintiffs' prior rights and goodwill before adopting and using FREEDOM RECOVERY.

27. Plaintiffs have experienced actual confusion caused by the similarity of the parties' marks. Patients seeking treatment at Defendant's Freedom Recovery facility have physically appeared at Plaintiffs' Freedom Behavioral Hospital locations, mistakenly believing they were arriving at Defendant's facility or believing the two facilities were affiliated. Similarly, patients seeking treatment at Plaintiffs' Freedom Behavioral Hospital locations have physically appeared at Defendant's Freedom Recovery facility, mistakenly believing they were arriving at Plaintiffs' facility. Plaintiffs' Service Development Representative receives approximately two to three telephone calls per month from individuals who are seeking Freedom Recovery but have mistakenly contacted Freedom Behavioral Hospital because they are confused by the similarity of the names. The confusion extends beyond individual consumers to healthcare professionals and emergency transport providers: patients have arrived at Freedom Recovery in ambulances dispatched from hospitals and other facilities who were actually intended for Freedom Behavioral Hospital, requiring Freedom Recovery to redirect those patients back by ambulance to Freedom Behavioral Hospital. In addition, counselors, therapists, and practitioners' offices, which are primary referral sources for behavioral-health and treatment services, have confused Freedom Behavioral Hospital with Freedom Recovery, creating a material risk that patients who should be referred to Freedom Behavioral Hospital are instead directed to Freedom Recovery. The confusion has reached a point that, on or about August 27, 2026, Freedom Recovery staff told Plaintiffs' representative words to the effect of: "we have to do something about the Freedom brands; this is too confusing." On information and belief, state regulatory agencies have also mistakenly associated Defendant's facility with Plaintiffs' operations. These instances of actual confusion are

further described in the Declaration of Me'Chelle Yvette Allen, attached hereto as Exhibit 2, and the Declaration of Katherine Roberts Nola, attached hereto as Exhibit 4.

28. The confusion caused by the similarity of the marks has diverted Plaintiffs' resources from their primary marketing and outreach activities. Plaintiffs' employees have had to devote additional time educating customers and referral sources on the fact that the parties' are in fact different entities. Every hour spent clarifying that Freedom Behavioral Hospital is not Freedom Recovery is an hour that cannot be devoted to building new referral relationships, conducting educational meetings, or engaging in the community events that drive patient admissions. This diversion of resources directly impacts Plaintiffs' patient volume and revenue.

29. Defendant's marketing and outreach are not confined to a purely local facility. Defendant uses the national toll-free telephone number 1-866-734-2065, maintains CARF accreditation, attended the Louisiana Misdemeanor Probation Officers Association Conference in both 2024 and 2025, and, upon information and belief, actively markets its services to state agencies and probation officers. These activities demonstrate geographic reach beyond West Monroe and increase the likelihood of confusion with Plaintiffs' FREEDOM Marks.

30. Prior to filing this action, Plaintiffs sent a cease-and-desist letter to Defendant demanding that Defendant cease all use of the FREEDOM RECOVERY mark. A true and correct copy of the cease-and-desist letter is attached hereto as Exhibit 3. Defendant, through its counsel, acknowledged receipt of the cease-and-desist letter and requested additional time to respond. Defendant thereafter ceased all communication and failed to respond further. Despite receiving actual notice of Plaintiffs' rights and objections and having the opportunity to consult with counsel, Defendant has continued its unauthorized use of the FREEDOM RECOVERY mark without interruption. Upon information and belief, Defendant has also made plans to expand its operations

to an additional location under the FREEDOM RECOVERY name. Defendant's continued use after receiving actual notice constitutes willful, knowing, and deliberate infringement and demonstrates bad faith.

31. Defendant's bad faith intent to copy Plaintiffs is also apparent through its deliberate attempts to learn Plaintiffs' operational information, as described in the Declaration of Me'Chelle Yvette Allen attached hereto as Exhibit 2. Upon information and belief, Tammy Jones, who served as the Human Resources Director at Freedom Behavioral Hospital of Monroe, simultaneously performed bookkeeping work for Freedom Recovery while employed by Plaintiffs. Ms. Jones maintained a personal relationship with David Rogers, the purported owner of Freedom Recovery. Ms. Jones's dual role provided her with access to the financial records, operational details, and internal processes of both entities, creating a direct channel through which Plaintiffs' proprietary information could have been disclosed to Defendant without authorization.

32. Upon information and belief, David Rogers, the purported owner of Freedom Recovery, gained unauthorized access to Freedom Behavioral Hospital of Monroe's facility after regular business hours, where he toured the facility without authorization from Plaintiffs' management or administration. This unauthorized access to Plaintiffs' facility raises serious concerns regarding the misappropriation of Plaintiffs' confidential business information and trade secrets.

33. Prior to Ms. Jones's departure from her employment with Plaintiffs, she attempted to delete files from her work computer, including by wiping the computer and emptying the recycle bin. Plaintiffs retained forensic specialists to examine Ms. Jones's work computer, and the forensic examination recovered more than two hundred eighty (280) files that had been deleted.

34. Upon information and belief, Ms. Jones's dual employment, Mr. Rogers's unauthorized facility access, and the attempted destruction of files, demonstrate a deliberate pattern of conduct by Defendant and its principals to misappropriate Plaintiffs' confidential business information and to trade on Plaintiffs' established goodwill, further supporting the willfulness of Defendant's infringement.

***Likelihood of Confusion Under Louisiana and Fifth Circuit Law***

35. Courts in Louisiana generally apply eight factors commonly known as the "digits of confusion" to evaluate whether a defendant's mark is likely to cause confusion with a plaintiff's mark. Each factor informs the likelihood-of-confusion analysis, and no single factor is dispositive. Here, all such factors inform that confusion is likely, the evidence of actual confusion proves that continued confusion is all but certain.

36. **Strength of Plaintiffs' marks**. Plaintiffs' FREEDOM Marks are strong and distinctive. The word "Freedom" is arbitrary when applied to behavioral-health and addiction-treatment services and serves as the dominant source-identifying feature of Plaintiffs' marks. Plaintiffs have used the FREEDOM Marks continuously since at least 2016, expanded operations across Louisiana, Mississippi, Texas, Arkansas, and Kansas, are affiliated with 17 entities and registered trade names, and collectively employ over 3,000 individuals. To the extent the FREEDOM Marks are not inherently distinctive, they have acquired secondary meaning through over eleven years of continuous and prominent use in signage, logos, advertising, and website branding.

37. **Similarity of the marks**. Defendant's FREEDOM RECOVERY mark is substantially similar to Plaintiffs' FREEDOM, FREEDOM BEHAVIORAL, and FREEDOM BEHAVIORAL HOSPITAL marks. Both parties use marks that share the identical dominant

feature “Freedom.” The additional terms “Recovery,” “Behavioral,” and “Behavioral Hospital” are descriptive or generic in connection with addiction-treatment and behavioral-health services and are insufficient to distinguish the marks, particularly in light of the actual usage by the parties which substantiates FREEDOM. The parallel “freedom[descriptor]” naming pattern creates a confusingly similar commercial impression. Due to the similarity of the marks themselves, a potential customer or referral source familiar with Plaintiffs would believe that the FREEDOM RECOVERY center is affiliated with Plaintiffs.

38. **Similarity of the products or services**. Both Defendant and Plaintiffs offer overlapping behavioral-health services, including inpatient residential care, individual therapy, group therapy, and co-occurring treatment services. For example, Plaintiffs treat a wide array of behavioral-health services, including mental health, co-occuring treatment, substance abuse, and chemical dependency, and Plaintiffs have advertised and provided these services under and in connection with the FREEDOM brand for over a decade. According to Defendant’s website, it too offers treatment for individual disorders including those with substance abuse, mental health disorders, or both, in connection with a FREEDOM brand. The parties’ services are directly competitive and closely related in the marketplace. And, to the extent that the services are not competitive, they are related in such a manner that a consumer familiar with the FREEDOM Marks would be led to believe that they are derived from a common or affiliated source.

39. **Identity of retail outlets and purchasers**. The parties’ shared consumer base consists in substantial part of individuals seeking urgent treatment for behavioral-health conditions including substance abuse treatment, together with the family members, probation officers, courts, and state agencies who refer them. Defendant operates in the same Monroe/West Monroe market as two of Plaintiffs’ facilities, with Defendant’s principal place of business located less than 10

miles from Plaintiffs' Freedom Behavioral Hospital of Monroe location, and 2.4 miles from its newer center at the Glenwood Regional Medical Center. Both parties target the same patient demographics in the same geographic area.

40. **Identity of advertising media**. Both parties use Internet-based marketing, including websites and social media, to reach consumers. Defendant features the FREEDOM RECOVERY mark on its website at "freedomrecoveryla.com" and uses the Facebook handle "@FreedomRecoveryla," which appear in online searches alongside Plaintiffs' domain name "freedombehavioral.com" and related online presence. Defendant also uses the national toll-free telephone number 1-866-734-2065, maintains CARF accreditation, and attended the Louisiana Misdemeanor Probation Officers Association Conference in both 2024 and 2025, actively marketing its services to state agencies and probation officers in the same manner as Plaintiffs.

41. **Defendant's intent**. Upon information and belief, Defendant adopted the FREEDOM RECOVERY mark with the intent to derive a benefit from Plaintiffs' reputation and goodwill. Given the proximity of Defendant's facility and the prominence of Plaintiffs' operations in the Monroe/West Monroe market, Defendant knew or should have known of Plaintiffs' prior rights before adopting FREEDOM RECOVERY. Defendant's bad faith is further evidenced by its deliberate attempts to learn Plaintiffs' operational information through the dual employment of Plaintiffs' Human Resources Director and the unauthorized after-hours access to Plaintiffs' facility by Defendant's principal David Rogers. After receiving Plaintiffs' cease-and-desist letter and requesting additional time to respond, Defendant failed to respond and continued its infringing use without interruption, and upon information and belief, has made plans to expand its operations under the FREEDOM RECOVERY name.

42. **Evidence of actual confusion**. Plaintiffs have experienced actual confusion caused by the similarity of the parties' marks. These instances of actual confusion are further described in the Declarations of Me'Chelle Yvette Allen (Exhibit 2) and Katherine Roberts Nola (Exhibit 4).

43. For example, patients seeking treatment at Defendant's Freedom Recovery facility have physically appeared at Plaintiffs' Freedom Behavioral Hospital locations, mistakenly believing they were arriving at Defendant's facility or believing the two facilities were affiliated. Similarly, patients seeking treatment at Plaintiffs' Freedom Behavioral Hospital locations have physically appeared at Defendant's Freedom Recovery facility, mistakenly believing they were arriving at Plaintiffs' facility.

44. Plaintiffs' Service Development Representative receives approximately two to three telephone calls per month from individuals seeking Freedom Recovery who mistakenly contacted Freedom Behavioral Hospital because they are confused by the similarity of the names.

45. The confusion extends to healthcare professionals and emergency transport providers. Patients have arrived at Freedom Recovery in ambulances dispatched from hospitals and other facilities who were actually intended for Freedom Behavioral Hospital, requiring Freedom Recovery to redirect those patients back by ambulance to Freedom Behavioral Hospital.

46. Plaintiff routinely receives referrals from counselors, therapists, and practitioners' offices. Plaintiffs' Monroe-based Service Development Representative has been made aware of these referral sources confusing Freedom Behavioral Hospital with Freedom Recovery, creating a material risk that patients who should be referred to Freedom Behavioral Hospital are instead directed to Freedom Recovery.

47. On or about August 27, 2026, Freedom Recovery staff told Plaintiffs' representative words to the effect of: "we have to do something about the Freedom brands; this is too confusing."

48. **Degree of care exercised by potential purchasers**. Persons seeking urgent treatment for behavioral-health conditions, including conditions caused by substance abuse, frequently make treatment inquiries under conditions of urgency or distress. Such persons, together with the family members, probation officers, courts, and state agencies who refer them, are less likely to exercise a high degree of care when distinguishing between similarly named providers offering overlapping services in the same market. The circumstances surrounding treatment decisions for addiction-related and behavioral-health services increase the likelihood of confusion.

49. In summation, Defendant's use of FREEDOM RECOVERY to provide overlapping services within 10 miles of Plaintiffs' Monroe location, and in a state where Plaintiffs have long-term, continuous operations through multiple facilities and clinic locations as part of a broad family of affiliated entities, is likely to cause confusion, especially among the shared Louisiana patient base. Indeed, it already has caused actual confusion by both patients (e.g., customers), physician referral sources, and even ambulance drivers bringing patients to the wrong location. Unless Defendant is enjoined, Plaintiffs and their consumers will continue to suffer irreparable harm, loss of sales, loss of control over their marks, dilution of their goodwill, and other damages.

## CLAIMS FOR RELIEF

### *COUNT I: FEDERAL TRADEMARK INFRINGEMENT*

50. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

51. Plaintiffs are the owners of valid, subsisting, and enforceable common-law trademark rights arising from their interstate use and common-law goodwill in the FREEDOM Marks and related marks.

52. Without Plaintiffs' authorization, Defendant has used confusingly similar variations of Plaintiffs' common-law trademarks in connection with the advertising, marketing, promotion, offering for sale, sale, and distribution of services.

53. Defendant's use of FREEDOM RECOVERY is confusingly similar to Plaintiffs' FREEDOM Marks because the marks share the identical dominant feature "Freedom."

54. Defendant has used the accused mark and confusingly similar matter in connection with identical, overlapping, or closely related addiction-related and behavioral-health services, including residential inpatient care, individual therapy, group therapy, and substance abuse and chemical dependency treatment.

55. Defendant's acts are likely to cause confusion as to affiliation, connection, association, sponsorship, approval, or source between Plaintiffs' and Defendant's offered services, particularly in light of the parties' proximity, overlapping services, Internet-based marketing, broader outreach, and reports of actual confusion.

56. By reason of the foregoing, Defendant has infringed Plaintiffs' valid common-law trademark rights in the FREEDOM Marks in violation of 15 U.S.C. § 1125(a), and Plaintiffs have been damaged and are entitled to injunctive relief, Defendant's profits, damages, costs, and such other relief as the Court deems just and proper.

57. Defendant's infringement has been willful and deliberate, as evidenced by Defendant's continued use of the FREEDOM RECOVERY mark after receiving Plaintiffs' cease-and-desist letter (Exhibit 3) and after Defendant's counsel requested and received additional time

to respond but thereafter failed to respond or take corrective action, and in light of Defendant's decision to name itself FREEDOM after its deliberate attempts to learn more about the operations of Plaintiffs.

***COUNT II: LOUISIANA TRADEMARK INFRINGEMENT LA. R.S. 51:1405, 1409***

58. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59. Plaintiffs are the owners of valid trademark rights in Louisiana, including rights arising from their Louisiana use and common-law goodwill associated with the FREEDOM Marks and related marks.

60. Defendant has used in Louisiana, without Plaintiffs' consent, confusingly similar versions of Plaintiffs' marks in connection with the sale, advertising, offering for sale, distribution, and promotion of goods and services, which directly compete with those offered by Plaintiffs under their FREEDOM Marks.

61. Defendant's acts are likely to cause confusion as to source, sponsorship, approval, affiliation, or association and constitute infringement under Louisiana trademark law, particularly given the parties' proximity, overlapping services, and Defendant's broader marketing reach.

62. Plaintiffs have been damaged by Defendant's infringement and are entitled to the remedies provided by Louisiana law, including injunctive relief, damages, profits, costs, and such other relief as allowed by La. R.S. 51:1409.

***COUNT III: LOUISIANA TRADEMARK DILUTION (La. R.S. 51:1409(B))***

63. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64. Plaintiffs' FREEDOM Marks possess distinctive quality in Louisiana. Plaintiffs have used the marks continuously for more than a decade, since at least 2016, in connection with behavioral-health and addiction-treatment services; are affiliated with 17 entities and registered trade names operating under the FREEDOM BEHAVIORAL HOSPITAL brand; collectively employ over 3,000 individuals; and have expanded across multiple states.

65. Louisiana's dilution statute, La. R.S. 51:1409(B), does not require proof that a mark is "famous" in the manner required under federal dilution law. It protects distinctive marks from conduct likely to impair their distinctive quality.

66. Defendant's use of FREEDOM RECOVERY for overlapping services, including the services for the treatment or mental health, co-occurring issues, substance abuse and chemical dependency issues, is likely to cause dilution of the distinctive quality of Plaintiffs' FREEDOM Marks by blurring the source-identifying significance of the "FREEDOM" mark family in the behavioral-health and addiction-treatment sectors.

67. By reason of the foregoing, Plaintiffs are entitled to injunctive relief and damages under La. R.S. 51:1409(B), together with such other relief as the Court deems just and proper.

## ***COUNT IV: LOUISIANA UNFAIR TRADE PRACTICES ACT***
## ***(La. R.S. 51:1401 et seq.)***

68. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. Defendant's adoption and use of FREEDOM RECOVERY in the same geographic market and for overlapping services, including the services for the treatment or mental health, co-occurring issues, substance abuse and chemical dependency issues, constitutes an unfair and deceptive trade practice. Defendant's unfair conduct extends beyond the mere adoption of a confusingly similar mark and includes the deliberate acquisition of Plaintiffs' confidential business

information through the dual employment of Plaintiffs' Human Resources Director by Freedom Recovery, the unauthorized after-hours access to Plaintiffs' facility by Defendant's principal, and the attempted destruction of files from Plaintiffs' work computer.

70. Defendant's conduct is likely to mislead consumers as to the source, sponsorship, affiliation, or association of Defendant's services with Plaintiffs.

71. Defendant's actions constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of La. R.S. 51:1405(A).

72. Defendant's unfair and deceptive conduct was committed knowingly and willfully, as demonstrated by Defendant's refusal to cease its infringing activity after receiving Plaintiffs' cease-and-desist letter (Exhibit 3) and after Defendant's counsel requested additional time to respond but thereafter failed to respond or take corrective action.

73. Plaintiffs have suffered ascertainable loss as a result of Defendant's conduct and are entitled to damages, attorneys' fees, and costs under La. R.S. 51:1409, together with such other relief as the Court deems just and proper.

***COUNT V: TRADE NAME INFRINGEMENT (La. R.S. 51:211 et seq.)***

74. Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75. Plaintiffs own and use trade names registered with the Louisiana Secretary of State, including "Freedom Behavioral Hospital of Monroe," "Freedom Behavioral Hospital of West Monroe," and "Freedom Behavioral Hospital of Monroe-Ruston Campus," among others.

76. These registered trade names constitute prima facie evidence of Plaintiffs' ownership and priority in the relevant geographic markets.

77. Defendant's use of "Freedom Recovery" in West Monroe, Louisiana, infringes Plaintiffs' registered trade names by creating a likelihood of confusion among consumers in the same geographic area.

78. Plaintiffs are entitled to injunctive relief and damages under Louisiana trade-name law, together with such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Counts I through V and grant the following relief:

a) That Defendant be permanently enjoined from using FREEDOM RECOVERY or any other mark, logo, website domain, social-media handle, trade name, or designation that is confusingly similar to Plaintiffs' FREEDOM, FREEDOM BEHAVIORAL HOSPITAL, and FREEDOM BEHAVIORAL marks or that is likely to dilute their distinctive quality;

b) That Defendant be ordered to cease and desist from advertising, marketing, promoting, offering for sale, selling, or distributing any goods or services in a manner that is likely to confuse consumers as to Defendant's affiliation, sponsorship, approval, source, or association with Plaintiffs;

c) That Defendant be ordered to account for and disgorge all gains, profits, and advantages derived from the acts complained of herein, and that Plaintiffs recover Defendant's profits, Plaintiffs' actual and compensatory damages, and all damages and other monetary relief permitted by the Lanham Act, federal and Louisiana dilution statutes, Louisiana trademark law, LUTPA, Louisiana trade-name law, and other applicable law;

d) That any damages awarded to Plaintiffs be trebled or otherwise enhanced to the fullest extent permitted by law because Defendant's conduct was intentional, willful,

knowing, deliberate, and in bad faith, including as evidenced by Defendant's continued infringement after receipt of Plaintiffs' cease-and-desist letter (Exhibit 3) and Defendant's counsel's failure to respond after requesting additional time;

e) That Plaintiffs recover their costs, expenses, and attorneys' fees to the fullest extent permitted by law, including under the Lanham Act, LUTPA, Louisiana trade-name law, and any other applicable statute or doctrine authorizing such relief, and that the Court find this to be an "exceptional case" warranting attorneys' fees under 15 U.S.C. § 1117(a) in light of Defendant's willful and deliberate conduct;

f) That Plaintiffs be awarded pre-judgment and post-judgment interest as permitted by law; and

g) That Plaintiffs be awarded such other, further, legal, and equitable relief as the Court deems just, proper, and appropriate.

Dated: September 24, 2026

Respectfully submitted,

*/s/ R. Devin Ricci*

R. Devin Ricci (#34724)
Stephen M. Kepper (#34618)
**KEAN MILLER LLP**
BankPlus Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
(504) 585-3050
devin.ricci@keanmiller.com
stephen.kepper@keanmiller.com

***Attorneys for Plaintiffs***